IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| United States of America : | |
| : | Case No. 1:08-cr-062 |
| : | |
| : | District Judge Susan J. Dlott |
| v. : | |
| : | ORDER DENYING |
| Diazante Lewis : | DEFENDANT'S MOTION TO |
| : | SUPPRESS EVIDENCE |
| Defendant : | |

This matter comes before the Court on Defendant Diazante Lewis' Motion to Suppress Evidence (doc. 13) and the Government's response (doc. 14). The Court held a hearing on the motion on October 28, 2008. For the reasons that follow, the Court **DENIES** Defendant's motion.

## I.  FACTUAL BACKGROUND

Lewis is charged with one count of unlawful possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924.[1] Officers found the firearm forming the basis of that charge during a search of Lewis' car that took place during a traffic stop on the evening of April 10, 2008. Lewis moves for the suppression of all evidence seized during the stop of his vehicle and any statements he may have made as a result of the stop. Four officers testified at the suppression hearing, including Officer Jeffrey Ertel, the primary officer who pulled Lewis over, and Officers

---

[1] The Indictment alleges that Lewis had been previously convicted in three separate cases in the Hamilton County Court of Common Pleas of crimes punishable by imprisonment for a term exceeding one year, including possession of cocaine, tampering with evidence, trafficking in cocaine, and aggravated assault.

Brian Kneller, Antonio Etter, and Charles Bell, three officers who arrived as backup support. In addition to the testimony of the officers, the Government also provided the video recordings of the stop from the Motor Vehicle Recording ("MVR") devices in Officer Ertel's and Officer Kneller's patrol cars.

Officer Ertel was on patrol the night of the traffic stop and saw Lewis driving south on McMicken St. in a Chevrolet Camaro convertible at approximately 10:30 p.m. Officer Ertel, who was driving north on McMicken St., noticed that Lewis' high beam lights were on and turned around to follow him.[2] After following Lewis for a short distance, Officer Ertel observed him roll though a stop sign.[3] Having observed two traffic violations – driving with high beam lights and failure to come to a complete stop at the stop sign – Officer Ertel pulled Lewis over. After calling in the traffic stop, Officer Ertel approached Lewis' car, asked Lewis for identification and explained why he had stopped him. Lewis admitted to driving with his high beams on, claiming that his headlight was broken. Officer Ertel then asked the two passengers for their identification. A male passenger seated in the back behind Lewis did not have any identification, but gave Officer Ertel his name, birth date, social security number, and address.

During the suppression hearing, Officer Ertel maintained that he smelled unburnt marijuana emanating from Lewis' vehicle. However, Officer Ertel mentioned nothing about

---

[2] The video from Officer Ertel's MVR device begins with Officer Ertel following Lewis. At some point late in the MVR recording, approximately thirty-four minutes after the initial traffic stop, Officer Ertel told another officer, possibly his supervisor, that he was stopped on McMicken checking his MVR device when he saw Lewis drive by. At the suppression hearing, as stated above, Officer Ertel claimed that he was driving when he noticed Lewis. Defendant seized upon this contradiction arguing that it calls into question the entirety of Officer Ertel's testimony. However, the Court finds this contradiction to be immaterial and notes that the MVR recording corroborates the material aspects of Officer Ertel's testimony.

[3] The MVR recording shows Lewis' car from behind as it rolls through the stop sign.

smelling marijuana during his initial conversation with Lewis. Instead, after getting the passengers' information, he returned to his patrol car to verify the identities of the men and run a query on the car. A few minutes later, Officers Brian Kneller, Antonio Etter,[4] and Charles Bell arrived on the scene. Officer Ertel, who was still in his patrol car when the other officers arrived, was having trouble verifying the identity of the passenger seated behind Lewis and asked Officer Etter to question the individual again to make sure he had provided correct information. Approximately ten minutes elapsed between the start of the traffic stop and the point where Officer Ertel was finally able to verify the passenger's identity.

Officer Ertel spent close to five more minutes in his patrol cruiser completing the traffic ticket for Lewis.[5] (See Govt. Ex. 1.) During this time, Officer Ertel noted that all three men had prior weapons charges, though there were no outstanding warrants for Lewis or the two passengers. Also during this time, Officer Ertel engaged in a brief discussion with the other officers as to whether they smelled marijuana in or around Lewis' car. The conversation was captured on the MVR recording from Officer Ertel's car, but Officer Ertel is the only officer whose comments are clearly audible, presumably because he was the only officer wearing a microphone linked to that MVR device.[6] Because the other officers' comments are at times

---

[4] Officer Kneller and Officer Etter arrived in the same patrol car and parked directly behind Officer Ertel. As a result, the MVR recording from their car does not show Lewis' vehicle, but does show the events that took place to the side of the road.

[5] Conflicting dates appear on the ticket, which states near the top that Lewis was cited on April 10, 2008, but near the bottom states that summons was served on Lewis on March 10, 2008. At the suppression hearing, the witnesses all indicated that the traffic stop occurred on April 10, 2008. Consistent with Officer Ertel's testimony, the ticket shows two moving violations: the use of high beam lights and failure to stop at a stop sign.

[6] The second MVR device from Officer Kneller's car did not pick up any of the conversation.

inaudible, the Court cannot clearly discern from the recording who initiated the discussion about smelling marijuana. At the suppression hearing, Officer Ertel said he could not remember who first brought up the smell, but thought that it was either him or Officer Bell. He then claimed that Officer Etter said that he also smelled something, but thought that the odor might be coming from nearby trees. Consistent with this testimony, Officer Etter testified that he thought he smelled marijuana but was not sure if it was actually marijuana or a different odor coming from the woods. Officer Etter then stated that the other officers were more confident about smelling marijuana. Indeed, Officer Bell and Officer Kneller testified that Lewis' car smelled like marijuana. Officer Kneller stated that he noticed the odor upon approaching the car while Officer Bell stated that he first noticed the odor when driving past the traffic stop. Officer Bell also testified that he was the first to mention the odor.

Approximately fifteen minutes into the traffic stop, Officer Ertel returned to Lewis' car to give him the traffic ticket. Officer Bell and Officer Kneller approached the rear of the vehicle. Prior to handing the ticket to Lewis, Officer Ertel asked if there was anything in the vehicle that he needed to know about. He then specifically asked Lewis and the two passengers if they had been smoking marijuana. The men denied having any marijuana. However, Officers Ertel, Kneller, and Bell all testified that they smelled marijuana when they approached the car.

After briefly questioning the men, Officer Ertel handed Lewis the ticket and directed him to sign it. Officer Ertel then looked at Officers Kneller and Bell and asked, "Am I the only one? Do you too?" According to Officer Ertel, the other officers nodded affirmatively in answer. Officer Ertel then ordered everyone out of the car. Lewis and the two passengers exited the car and stood off to the side of the road. Officer Ertel asked the men if they had anything in their

pockets. Seeing Lewis move to reach in his pocket, Officer Lewis ordered the men not to reach into their pockets. However, Lewis continued to reach into his pocket. Lewis then pulled out a small amount of marijuana that was wrapped in paper and handed it to Officer Ertel. Because possession of marijuana is a mandatory arrest offense, one of the officers tried to place Lewis in handcuffs, but Lewis took off running. Despite his efforts to escape, Lewis did not get more than a few feet away before Officer Kneller grabbed him and dragged him to the ground. After securing Lewis and performing a pat down search of the three men, Officers Ertel and Bell searched Lewis' car. During the search, Officer Bell found a loaded pistol under Lewis' seat.

## II. ANALYSIS

Lewis moves for the suppression of all evidence obtained during the stop of his vehicle and any statements he may have made, arguing that the officers exceeded the scope of the initial traffic stop and failed to Mirandize him before interrogating him. As to the Miranda issue, there is no indication that Lewis made any statements other than to confirm that he was driving with his high beam lights on. Lewis was not in custody at that time and the officer had no duty to read him his rights at that point.[7] Accordingly, the main issues in this case are whether the

---

[7] The Supreme Court has held that when an individual is subjected to custodial police interrogation, he must receive full warnings of his constitutional rights before any statements may be obtained from him. Miranda v. Arizona, 384 U.S. 436, 439 (1966). Courts must consider the "totality of the circumstances" to determine whether an individual is in custody for Miranda purposes. Custody has been defined as an arrest or its functional equivalent. Berkemer v. McCarty, 468 U.S. 420, 441 (1984). Two discrete inquiries are essential to the determination of custody for purposes of Miranda warnings: "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." Thompson v. Keohane, 516 U.S. 99, 112 (1995).

Though an individual is generally not free to leave during a traffic stop, the Supreme Court has held that where an individual was briefly questioned during a traffic stop and was given no indication that he would be detained for a longer period of time or taken into custody, he was not

police officers had probable cause or reasonable suspicion to make the traffic stop and whether the police officers exceeded the scope of a lawful traffic stop.

The Sixth Circuit recently set the framework for analyzing the permissibility of a traffic stop as follows:

> An ordinary traffic stop by a police officer is a "seizure" within the meaning of the Fourth Amendment. Accordingly, any evidence seized during an illegal traffic stop must be suppressed as "fruits of the poisonous tree." This circuit has developed two separate tests to determine the constitutional validity of vehicle stops: an officer must have probable cause to make a stop for a civil infraction, and reasonable suspicion of an ongoing crime to make a stop for a criminal violation.

United States v. Blair, 524 F.3d 740, 748 (6th Cir. 2008) (internal citations omitted).[8] When a traffic stop is supported by probable cause, an officer's subjective intent is irrelevant. Id. In this case, Officer Ertel observed Lewis drive with his high beam lights on and roll through a stop sign. Both the traffic citation issued to Lewis and the MVR recording from Officer Ertel's

---

exposed to a custodial interrogation requiring the reading of Miranda rights. Berkemer, 468 U.S. at 442; see also Pennsylvania v. Bruder, 488 U.S. 9, 11 (1988); United States v. Wright, 220 F. App'x 417, 421, 2007 WL 1028863 (6th Cir. Apr. 3, 2007); United States v. Allen, Criminal No. 07-53-KKC, 2007 WL 2955948, at *5-7 (E.D. Ky. Oct. 1, 2007). In so holding, the Supreme Court noted that "[a] policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." Berkemer, 468 U.S. at 442. Defendant Lewis was not in custody when he admitted to driving with his high beam lights on. He made that statement mere minutes into the traffic stop in response to Officer Ertel's question as to whether Lewis knew why he had been pulled over. Such questioning is entirely reasonable in the context of a traffic stop. The fact that Officer Ertel smelled marijuana upon approaching the car does not transform the brief questioning into a custodial interrogation as Defendant Lewis was given no indication of Officer Ertel's suspicions.

[8] The Sixth Circuit also noted, but refused to resolve, a conflict within the Circuit as to whether reasonable suspicion can justify a traffic stop for a civil infraction. Blair, 524 F.3d at 748 n. 2 (comparing Weaver v. Shadoan, 340 F.3d 398, 407-08 (6th Cir. 2003) (upholding stop where police had reasonable suspicion of civil infraction) with United States v. Freeman, 209 F.3d 464, 466 (6th Cir. 2000) (invalidating stop where police did not have probable cause to believe a traffic infraction had occurred)).

vehicle are consistent with Officer Ertel's testimony. Further Lewis' admission to driving with his high beam lights on was captured on the MVR recording. The evidence therefore shows that Officer Ertel had probable cause to stop Lewis for the traffic violations.

Having determined that the initial stop of Lewis' car was valid, the Court turns next to the scope of the stop. In Blair, the Sixth Circuit reiterated that "[o]nce the purpose for a traffic stop is completed, a police officer 'may not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention.'" Id. at 752 (quoting United States v. Perez, 440 F.3d 363, 370 (6th Cir. 2006) (internal quotations omitted)). The purpose of Lewis' stop was fulfilled at the point Officer Ertel issued Lewis a citation. Therefore, to justify any further detention of Lewis or his vehicle, the Government must show that circumstances arose during that stop creating reasonable suspicion of an ongoing crime.[9]

Those circumstances arose the minute that Officer Ertel smelled marijuana emanating from Lewis' vehicle. On its own, an officer's perception of the odor of an illegal substance

---

[9] The Court analyzes the continued detention as it would a basic Terry stop. An officer may "stop and briefly detain a person for investigatory purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry v. Ohio, 329 U.S. 1, 30 (1968)). The Court considers the totality of the surrounding circumstances in determining whether the officer has a particularized and objective basis for suspecting criminal activity. United States v. Arvizu, 534 U.S. 266, 274 (2002). In all cases, the scope of the Terry stop must be "reasonably be related to the circumstances that initially justified the stop." United States v. Richardson, 949 F.2d 851, 856 (6th Cir. 1991). The reasonableness of the stop depends on two factors: "(1)whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to a reasonable suspicion; and (2) whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." United States v. Hardnett, 804 F.2d 353, 356 (6th Cir. 1986).

warrants the detention of a suspect in order to investigate the situation further. United States v. Foster, 376 F.3d 577, 586 (6th Cir. 2004). Likewise, the odor of marijuana emanating from a vehicle "constitute[s] probable cause to believe that there [is] marijuana in the vehicle," and "[o]nce this probable cause exist[s], a search warrant [is] not necessary." United States v. Garza, 10 F.3d 1241, 1246 (6th Cir. 1993); see also United States v. Crumb, No. 08-3207, 2008 WL 2906770, at *3 (6th Cir. July 29, 2008) ("[W]e have followed Garza consistently in holding that the detection of a narcotic's odor, by itself, is sufficient to provide probable cause to conduct a lawful search of a vehicle."); Foster, 376 F.3d at 588 (holding that "when the officers detected the smell of marijuana coming from Foster's vehicle, this provided them with probable cause to search the vehicle without a search warrant" which "therefore turned a lawful Terry stop into a lawful search").

In the instant case, three officers, Officers Ertel, Bell, and Kneller, offered unwaivering testimony as to their belief that Lewis' car smelled like marijuana. Despite their testimony, Defendant argues that the officers exceeded the scope of the stop by taking fifteen minutes to issue a citation. Defendant further suggests that Officer Ertel was intent on searching Lewis' car and prolonged the length of the traffic stop unnecessarily in hope that probable cause would develop. In making this argument, Defendant relies heavily on the fact that Officer Ertel did not say anything about smelling marijuana until approximately fifteen minutes into the traffic stop. The fact that the officers did not bring up the odor until fifteen minutes into the traffic stop provides no reason to doubt the officers' credibility, particularly because back-up did not arrive until several minutes into the stop and the majority of the first fifteen minutes was spent verifying the identities of the men in Lewis' car and writing the citation. Similarly, the fact that

Officer Etter remained hesitant as to whether he smelled marijuana or some other odor from the nearby woods does not remove probable cause under the circumstances. To the contrary, Officer Etter's testimony that the other officers were more confident about the odor bolsters the testimony of those officers. The officers therefore did not exceed the scope of the stop by ordering Lewis and the other men out of the car. Moments later, the officers' suspicions were at least partially confirmed when Lewis voluntarily retrieved a bag of marijuana from his pocket, handed it to the officers and attempted to flea. Under these circumstances, there is no question but that the officers had probable cause to search Lewis' car and did not exceed the scope of the stop while doing so.

### III. CONCLUSION

Defendant Lewis' Motion to Suppress (doc. 13) is hereby **DENIED**.

IT IS SO ORDERED.

    s/Susan J. Dlott
Susan J. Dlott
United States District Judge